Number 222640, Persaud v. Commissioner of Social Security. Good morning, your honors, and may it please the court. My name is Christopher Bose and I represent the appellant Ishwar Persaud in this case. There's no question that the administrative law judge in this case failed to explicitly address the relevant factors under the treating physician regulations, which apply to this case because Mr. Persaud filed this claim before March of 2017. Under this court's binding precedent, the administrative law judge is charged with either assigning controlling weight to a well-supported opinion by a treating source, or, in the absence of that finding, providing good reasons for the weight being assigned to the opinion of the treating physician. Here, Dr. Robert Hecht treated Mr. Persaud over a four-year period, treated him very intensively, in fact, and obtained MRI evidence in 2015 and 2016, as well as something called electromyography, which is a test used to identify and confirm a condition called radiculopathy. Dr. Persaud did everything that we could possibly require from a treating physician in terms of substantiating the diagnosis and documenting the treatment. The physical therapy notes are in this file. In the judge's decision, the judge mentions Dr. Hecht's opinion as an afterthought. He says, Dr. Hecht's opinion that Mr. Persaud is disabled, is entitled to no weight. We don't argue here that such an opinion would be entitled to weight. Instead, we're focused on the very detailed two-to-three-page, single-spaced narrative report that Dr. Hecht wrote in combination with a checklist assessment. These findings are well-supported by the MRIs and well-supported by his clinical findings over time, including Sperling signs, which document cervical radiculopathy. Counsel, Dr. Hecht concluded that Mr. Persaud could not sit continuously for more than four hours. Is that right? Could not sit for more than four hours in an eight-hour workday. That's correct. We believe that would be work-preclusive. Was there any other physician that the ALJ relied on who opined one way or the other on how long Mr. Persaud could sit during an eight-hour workday? Specifically sitting, no. The judge simply said that Mr. Persaud could perform the demands of sedentary work, which under the regulations requires an individual to sit for six hours. So the inability to sit for six hours in an eight-hour workday typically would preclude sedentary work and Mr. Persaud's past relevant work as an accountant, which is done at a desk. The judge suggests that there's objective evidence that Mr. Persaud's condition is improving. It's hard to understand what this is based on other than comments from Dr. Hecht in the file, although the ALJ doesn't identify Dr. Hecht as the treating doctor and say he's been treating him for four years. He relied on all of this evidence. His treatment of Dr. Hecht appears as an afterthought at the very last paragraph of his decision addressing residual functional capacity. So it's not clear that he understood. It's at the end and it's not lengthy, but he does give the reason that it wasn't supported by the objective record, and presumably he also had in mind the discussion before that about Dr. Nipper and why isn't that enough, notwithstanding whether he appreciated the treating physician rule or not? Two very important reasons. The ALJ of Dr. Nipper, first of all, did not consider the October 2016 MRI. Neither did Dr. Telly. Dr. Telly is another doctor, a consultative doctor. Dr. Nipper is a workers' compensation doctor. Mr. Hecht was injured at work, so he has to go through the workers' compensation system. Dr. Nipper says there's nothing wrong with you, you can go back to work. Even the judge says, I don't buy that. I think he would be limited to sedentary work. But most importantly is in this case in Burgess, this court held that where a consultative physician does not consider the critical MRI evidence that the treating physician has, that consultative evidence should not be considered substantial evidence capable of undermining the facts, the opinion of the treating physician. So that's the first reason why objective evidence does not rise to that level, Your Honor. Dr. Nipper didn't have the whole case before him, right? Well, you pointed to the 2016 MRI, so teach me, what is the significance of that MRI? Yes, so in 2015, Mr. Persaud had an MRI of the cervical spine and the lumbar spine. These tests showed that he had, this is discussed at our brief at 45 and 46, but the first MRI showed disc bulging in the cervical spine, but by 2016 there was herniated discs throughout the cervical spine. Similarly, with respect to the lumbar spine, in the 2015 MRI showed that there was a disc herniation at L5S1. This is the lowest level of the lumbar spine, which typically creates the lower back pain. There was a disc herniation. The judge doesn't acknowledge that, even that misdecision. Just so I'm clear, you're saying that if you would have compared the 2015 MRIs to the 2016 MRIs, they would have shown a worsening of Mr. Persaud's condition? It most clearly does. In the 2016, we now have disc herniations at L4, L5, a three millimeter disc herniation, and a disc herniation at L5S1. Dr. Knipper never saw that MRI. The judge doesn't acknowledge that there's a disc herniation at L4, L5. He doesn't acknowledge that there's a disc herniation at L5S1. So the judge's own way analysis of the evidence could not possibly constitute an objective evidence analysis, saying that, oh, even if we don't say, well, you didn't follow the treating physician formally, you gave us good reasons otherwise. That can't be true in this case. A careful review of the evidence realized that that never happened. And that Dr. Rubenstein, who was another consultative doctor who considered the EMG evidence, said that he had a marked disability of 75% under the workers' compensation analysis. That's consistent with what Dr. Hecht said. I see my time is up. I have reserved time for rebuttal. Thank you, Your Honors. Thank you, Mr. Persaud. Ms. Stegman? May it please the Court. My name is Ann Ziegler on behalf of the Commissioner of Social Security. The Commissioner's final decision in this case acknowledged that Persaud had severe impairments in his knee, elbow, foot, back, and neck, all which resulted in significant limitations. After considering the record as a whole, the ALJ restricted him to a reduced range of sedentary work with the use of a cane and no more than occasional postural activities, such as stooping, bending, and climbing. Counsel points to all the things that they believe is lacking from the ALJ's evaluation of Dr. Hecht's treating source opinion. However, the question is not whether evidence could support plaintiff's position, but rather whether the decision as a whole supports the ALJ's position. Ms. Ziegler, don't the regulations specifically say that a treating physician's opinion gets determinative weight unless there's some problem with it, and if there is some problem with it, then the ALJ is required to go through certain steps in evaluating how much weight to give it. That's what the regulations say, right? Yes, Your Honor. The regulations do set out for a treating physician. And the ALJ did not do that, right? Your Honor, the ALJ did not mechanically walk through this. Well, yeah, right. I mean, look, I'm no fan of the treating physician rule. I'm glad they got rid of it. And I am no fan because I've seen so many of these cases where the treating physician fills out the checklist, and it clearly is not a very thoughtful thing. There are two things that strike me about this record. One is that's not Dr. Hecht. I don't know if I've ever seen a three-page, single-spaced analysis by the treating physician that directly addresses the issues of the patient's abilities in a very clear and forthright way. That's one thing. And the second thing is this is not a case where the ALJ said, well, he's the treating physician, but for these reasons, which may not be precisely an analysis going through everything, I don't like what he said. Am I not right that the ALJ here never said that Dr. Hecht was the treating physician? Correct, Your Honor. The ALJ never explicitly used treating source when referring to Dr. Hecht. But in the record, the ALJ thoroughly discussed all the treatment notes from island musculoskeletal care. That's interesting, and, I mean, that could be the case that, you know, one might infer from that that the ALJ recognized that island musculoskeletal, or whatever the name of the practice is, was Dr. Hecht, and therefore Dr. Hecht was the treating physician. Yeah. But that is just not said anywhere. And, you know, I have to say I think Ms. Bose is right that this reads as an antithesis. Like these doctors, who are consultative doctors, of whom I am equally skeptical for obvious reasons, say one thing. And then there's Dr. Hecht, but I don't like what Dr. Hecht says. I don't think it's consistent with the record without any details as to what is not consistent or what the objective evidence is that the ALJ is relying on. So I have a hard time, and, you know, I wish you could help me. Because it doesn't seem to me that it's not just he didn't technically go through saying I consider factor one and I consider factor two and this cuts this way and that cuts that way. It does not reflect any acknowledgment that this is a treating physician and has to be given some measure of special consideration at some level. Your Honor, the ALJ actually did acknowledge at the hearing and actually inquired from Prasad at the administrative hearing about his treatment relationship with Dr. Prasad and asked how long he had been seeing him. So when you look at the record as a whole, you can see that the ALJ did inquire about it and did understand that he had been seeing Dr. Prasad for the entire alleged period, the relevant period here. And while the ALJ didn't explicitly say that in the decision, the court doesn't have to look at the paragraphs in isolation. We look at the decision as a whole to see whether it supports the reasoning for giving little weight to Dr. Hecht's opinion. You wouldn't happen to know off the top of your head how much time there was between that hearing and the crafting of the opinion? No, Your Honor. The hearing was, let me see, I can tell you right now. April 2019 and the decision was May 2019, so just one month. So there's at least some possibility that he still remembered what happened. That is correct. That's actually. Remembered that question at the hearing. Yes, Your Honor, that's actually a relatively quick decision for most ALJs. They're not always that quick. They are not always that quick. So, yes, the ALJ did discuss that with Mr. Prasad at the hearing. And then the decision goes on. And while the paragraphs that the ALJ discussed Dr. Hecht's opinion is relatively short, if you look at the decision as a whole, you can see that there are reasons given in the entire decision. The ALJ discussed that Dr. Hecht's opinion was not supported by objective evidence. Right, and what objective evidence did he refer to? Well, looking back into earlier in the decision, he discusses the treatment records from Dr. Hecht and other providers at Island Musculoskeletal Care, which is a tough one to say. And those examinations found restricted ranges of motion, but otherwise full strength, intact sensation, normal reflexes. But, you see, that's not necessarily what I would consider objective evidence, right? It's not like there's been a test and it shows that the spine is normal and the MRI or the X-ray or whatever shows that, but the doctor unaccountably says the opposite. These are sort of subjective assessments at different times as to is there improvement or is there not improvement. Do you have a response to Mr. Bose's reading of the October 2016 MRI and whether that shows improvement or not? Yes, Your Honor. Well, there are, like Mr. Bose said, there are multiple MRIs in this case. So there are some in 2015 and some in 2016. And they do both show abnormal findings. And there are slight changes in the 2016 findings from the 2015. But the doctors here who gave the other opinions, like Dr. Nipper, Dr. Rubenshine, saw those, at least saw the earlier ones. They may not, it's unclear whether Dr. Nipper knew of the 2016 ones when he gave his opinion. Well, the question I was asking was Mr. Bose says that the 2016 one actually shows, I don't know how much significance to give to it or how much, but shows more of a problem than the October 2015, which would be inconsistent with a finding that he's actually getting better. Do you have a different read of that MRI? Well, Your Honor, the ALJ did consider the MRIs. He discussed all of those in the decision. Did he say that the 2016 MRI shows whatever Mr. Bose said it shows, but that is not an indication that it's actually getting worse? In other words, there's some analysis of it other than just a reference to the various MRIs. The ALJ did state that the objective evidence did not show any indication that would preclude sedentary work. And then the ALJ went on to discuss that the examination findings. So the answer is no, he didn't actually say that the 2016 shows improvement over the 2015, or it shows what Mr. Bose says it shows in terms of an extra displacement here or there, but for the following reasons, that's not significant. Correct, Your Honor. The ALJ discussed the MRI findings in the decision, but did not make any statement as to what. And then I also write that all of the doctors on whom the ALJ relies are consultative physicians who are retained, in effect, by either workers' comp insurers or the Social Security Administration. Yes, Your Honor. Yes and no, Your Honor, because the ALJ here doesn't totally discount Dr. Heck's opinion and doesn't totally adopt the other opinions. Am I reading this like crazy to say I read, he says there's Nipper, there's Telly, they say this. And lastly, there's Dr. Heck, but his opinion is inconsistent with everybody else. And I'm saying, is the everybody else anyone other than hired guns who have an obvious incentive to not be overindulgent of applicants and who see the person once? Well, Your Honor, the ALJ also considers the treatment notes and the findings from the other doctors. So there's multiple doctors in this record that don't necessarily give an opinion as to functional capacity. But the ones who give the opinion about functional capacity are all the consultants that are inconsistent with Dr. Heck are all consultative physicians, right? Yes, Your Honor. Dr. Nipper is a workers' compensation, I believe. And then Dr. Telly is a state SSA consultative examiner. I assume that there's no defined correlation between a 75% disability for purposes of workers' compensation and complete disability for the purpose of Social Security, right? Because Social Security requires total disability and inability to work at all, and workers' comp has a different standard.  They are different standards. So 75% workers' comp does not translate into SSA. But it is noteworthy. It doesn't translate either way, really, right? I mean, it's just a different standard being applied. But it is noteworthy that the workers' compensation was looking at his prior job, which was a light exertion job, and saying, he can't do that job anymore. Well, the ALJ agreed here, said he can't do that job anymore. But he can still do a lesser exertional work with these restrictions of having a cane to ambulate and only occasional postural limitations. In that context, so Dr. Hecht says that Mr. Prasad cannot sit for more than four hours in an eight-hour workday. Does any other physician who the ALJ relies on address that time, that durational limit that Dr. Hecht does? No, Your Honor. No specific physician actually opines the exact amount of hours that he can sit. But the ALJ doesn't have to rely exactly on any physician's opinion to come up. Go ahead, Your Honor. Well, in that context, doesn't the failure to address the Burgess factors in terms of the length of treating relationship, the evidence supporting Dr. Hecht's opinion, and his specialty in the subject matter area, doesn't that make that more important here, given that there's no other physician who actually provides an opinion or findings as to the amount of time that Mr. Prasad could sit on a continuous basis? Well, Your Honor, there are other doctors that opine into his general functional capacity but didn't go function by function, like you're saying, with sitting, standing, walking. But that's not necessarily the doctor's job. It's the ALJ's job to look at the record as a whole to determine what the functional capacity is. And based on things like the treatment records, what the examination findings are, what the plaintiff's subjective complaints are. Here, the physical therapy findings are relevant because most of those findings didn't show complaints of sitting. They related to his elbow and his knee. It didn't necessarily have to do with anything with his back or his neck. So it doesn't relate to, like you're saying, the function of sitting. Thank you, counsel. Thank you, Your Honor. Mr. Boese, you're reserved three minutes for a question. Thank you, Your Honors. The suggestion that the judge looked at the whole record and came up with good reasons for discounting Dr. Hecht's opinion should be rejected simply because it's the judge's review of the record. He's not citing to a doctor who sat down at the hearing and looked at everything and listened to testimony and saw all of the MRIs, the EMGs. The only medical doctor who looked at all of the evidence, the MRIs, the EMGs, is Dr. Hecht. His opinion is the one that would be most comprehensive in this context. Burgess vacated and remanded precisely because a consultative physician who appeared before the ALJ had not seen one of the critical MRIs. That is the case here. Judge Subramanian, at our brief at pages 45 and 46, and our reply brief at pages 7 and 8, detail what we believe is a worsening of his condition. Whereas the cervical spine MRI in 2015 has disc bulges, by 2016 there's three disc herniations. The judge acknowledges that 2016 MRI, but he doesn't acknowledge that there's a difference in the lumbar spine MRI between 2015. There's now a disc herniation at L4, L5 that wasn't previously there, and there's a disc herniation at L5, S1 that wasn't previously there. The judge acknowledges none of that. Lumbar spine is the lower part of the back. This lumbar radiculopathy means that pain radiates down the back. This is something that affects sitting. Dr. Hecht says so. We should rely on what the treating doctor who considered all of the evidence said in that instance. Stigler said that the relationship with Dr. Hecht came up at the hearing. Is that something that we consider in reviewing? Yeah, that's puzzling, right? Because if the judge knew that Dr. Hecht was the treating physician...  I'm sorry? I'm sorry. The decision. If he knew that he was a treating doctor, why doesn't he apply the treating physician regulations? It's puzzling to me. It seems as though he just says, oh, there's another doctor, Dr. Hecht, who says this. Keep in mind that island musculoskeletal, there's not just Dr. Hecht. There was Dr. Varma. There was Dr. Grewal.  So it's possible that Judge Shriver, ALJ Shriver, didn't appreciate the fact that that was all Dr. Hecht. And that's a backdoor way of saying that he considered Dr. Hecht a treating physician. I see my time is up. I appreciate your attention to this matter. And we ask that you vacate and remand this case for additional proceedings. Thank you. Thank you, counsel. Thank you both. I think the case is under advisement.